# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| **RANDY KOENEMANN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )  CAUSE NO. 1:11-CV-55 |
| | ) |
| **J.C. GUTIERREZ, #1769F** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

### I. INTRODUCTION

On February 7, 2010, the Plaintiff, Randy Koenemann, was involved in a fight with his live-in girlfriend, Donna Dennis, in front of their two-year-old daughter, Karmen. After Nicole Hettinger, the downstairs neighbor and Dennis's cousin, called 911 to report the disturbance, Fort Wayne Police Officer J.C. Gutierrez arrived. After questioning Koenemann, Dennis, Karmen, and Hettinger, Gutierrez arrested Koenemann for domestic battery, a Class D felony under Indiana law.

Now, Koenemann is suing Gutierrez under 42 U.S.C. § 1983 because he claims Gutierrez should have believed his version of events, ignored obvious exculpatory facts, and should have investigated Dennis's police record before acting. Placed in a legal context, Koenemann alleges he was arrested without probable cause in violation of his rights under the Fourth and Fourteenth Amendments of the United States Constitution.[1]

---

[1] Subject matter jurisdiction arises under 28 U.S.C. §§ 1331 and 1343. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

1

Gutierrez, on the other hand, argues in his Motion for Summary Judgment (Docket # 24) that even if the Court views the facts in a light most favorable to Koenemann, and gives him every inference, he still had probable cause to arrest Koenemann as a matter of law.

As a side note, Gutierrez challenges some of Koenemann's so-called facts in a Motion to Strike (Docket # 32), but since Koenemann's case fails even with this evidence, as the following discussion reveals, that motion is DENIED as MOOT.

Accordingly, on this record, the Motion for Summary Judgment motion will be GRANTED.

## II. FACTUAL BACKGROUND[2]

In February 2010, Koenemann was living with Dennis in an upstairs apartment at 1235 Huestis Avenue in Fort Wayne. (Koenemann Dep. 12-13.) The relationship between the two had been off and on for years, but it had produced a daughter, Karmen, who was two-and-a-half-years-old and living with them in the small apartment. (Koenemann Dep. 12-13, 16-18.) Hettinger, her children, and a boyfriend lived in the apartment directly below Koenemann and Dennis. (Koenemann Dep. 13.)

Just a few days before the incident, Koenemann fractured both wrists at work, and a medical clinic put immobilizers on his forearms, wrists, and hands. (Koenemann Aff. ¶¶ 3, 10.)

Koenemann was home with Karmen on February 7, 2010, when Dennis arrived home. Almost immediately a dispute broke out that became physical. Although the precise details of their fight are disputed, everybody agrees that at some point Koenemann had Dennis's new printer, either in his hands, when he then threw it to the floor—the version Dennis told to

---

[2]For summary judgment purposes, the facts are recited in the light most favorable to Koenemann, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

Gutierrez (Gutierrez Aff. ¶ 11)—or between his forearms, when he dropped it upon Dennis's attack (Koenemann Aff. ¶ 5). While scuffling, both Koenemann and Dennis ended up on the floor, but afterward Koenemann picked up Karmen to try to get away. (Koenemann Aff. ¶ 5.)

Dennis then went to Hettinger's downstairs apartment (Koenemann Dep. 31), perhaps motivated by Koenemann's threat to call the police (Koenemann Aff. ¶ 6). By this time, however, Hettinger, apparently alarmed at the sounds coming from upstairs, had already called 911 to report a domestic battery. (Koenemann Dep. 31; Koenemann Aff. ¶ 7; Gutierrez Aff. ¶ 4.) Dennis then arrived at Hettinger's door, cussing, wailing, and crying. (Koenemann Dep. 31; Koenemann Aff. ¶ 7.)

Based on Hettinger's report of a domestic battery in the upstairs apartment, Gutierrez and Officer Ricky Brumett were dispatched to the home, and, when Gutierrez arrived, Koenemann was on the phone with the police reporting that Dennis had attacked him. (Gutierrez Aff. ¶¶ 2, 4-5; Koenemann Aff. ¶ 8.) While Officer Brumett stayed downstairs and spoke with Dennis and Hettinger, Koenemann ended his call and informed Gutierrez that he and Dennis had gotten into an argument that Karmen had witnessed. (Gutierrez Aff. ¶¶ 4-6; Koenemann Aff. ¶ 5.)

According to Koenemann, the argument started over his moving a television, which led to Dennis attacking him by scratching and punching his face, and that, after restraining her by holding her down, she went to Hettinger's apartment. (Gutierrez Aff. ¶ 6.) Gutierrez asked Koenemann why did he not call the police immediately if this was what happened, but Koenemann claimed he waited because he was unsure if Dennis would come back upstairs. (Gutierrez Aff. ¶ 7.) Gutierrez did observe a scratch on Koenemann's face and braces on both

3

of his wrists, as he claimed he had broken them a few days previously (Gutierrez Aff. ¶ 8), and, according to Koenemann, he then demonstrated to Gutierrez that, as a result of the immobilizers, he could not have choked, shoved, or hit Dennis as she was claiming because it was too painful for him to do anything with them (Koenemann Aff. ¶ 10). Koenemann also told Gutierrez that Dennis had a prior record of domestic violence against both Koenemann and her own mother and urged Gutierrez to review Dennis's criminal record. (Koenemann Dep. 36, 40.) Apparently, Gutierrez brushed the request aside by simply saying, "I don't have to." (Koenemann Aff. ¶ 8.) Koenemann also asked to speak to Gutierrez's supervisor, but that too was denied. (Koenemann Aff. ¶ 8.)

At some point, Gutierrez spoke alone with Karmen since she was a witness. (Gutierrez Aff. ¶ 9; Koenemann Dep. 40.) Karmen confirmed that her parents had been fighting, and, when Gutierrez asked her if "your mommy hit your daddy, and if your daddy hit your mommy," she responded affirmatively to both questions. (Gutierrez Aff. ¶ 9; Koenemann Dep. 40.) Gutierrez then went downstairs to speak with Dennis and Hettinger, while Officer Brumett went upstairs to stay with Koenemann. (Gutierrez Aff. ¶ 10.)

What we know of Dennis's statements comes through Gutierrez, and Koenemann does not dispute what she purportedly reported. In short, Dennis offered a similar version concerning how the fight began (confirming Koenemann's statement that he had grabbed her new printer), but, according to her, after Koenemann threw the printer to the floor, he forcefully grabbed her, pushing her to the floor and pinning her there. (Gutierrez Aff. ¶¶ 6, 11-12.) Koenemann then reportedly put his right forearm, including his wrist brace, on her throat. (Gutierrez Aff. ¶ 12.) Dennis claimed that she was unable to breathe for about thirty seconds

4

until she broke free, kicking her feet against the floor and screaming for help from Hettinger. (Gutierrez Aff. ¶ 12.) She admitted, however, that she scratched Koenemann's face while trying to defend herself. (Gutierrez Aff. ¶ 12.)

In the process of interviewing the two participants, Gutierrez noted the striking size difference between Koenemann, a stocky man about 6'0" tall and weighing about 225 pounds, and Dennis, a slender woman around 5'3" or 5'6" in height and weighing about 125 pounds. (Gutierrez Aff. ¶ 16; Koenemann Dep. 16, 19-20.)

Although Dennis refused medical treatment, she complained of pain in her right rib area and lower back, and Gutierrez observed a bloody abrasion on Dennis's lower back, a reddish area under her throat, and a cut lip. (Gutierrez Aff. ¶ 13.) Gutierrez documented these injuries with photographs. (Gutierrez Aff. ¶ 15, Ex. A.) In contrast, Gutierrez saw only a scratch on Koenemann's face (although Koenemann claims it was really a cut and that both lips were also cut); Koenemann made no complaint of pain from the incident and denied any need for medical attention. (Gutierrez Aff. ¶ 8; Koenemann Aff. ¶ 5.)

Hettinger also provided insight by recounting that, before Dennis came down to her apartment, she heard screaming, which she initially thought was from Karmen and Dennis's six-year-old son (a child who, it turns out, was not home) followed by the sound of things being tossed about, and this led to her calling 911. (Gutierrez Aff. ¶ 14.) Hettinger reported that, soon after, Dennis came to her apartment, followed by Koenemann, although he immediately returned to the upstairs apartment. (Gutierrez Aff. ¶ 14.)

Gutierrez then arrested Koenemann for domestic battery, a felony since it was committed in the presence of Karmen, a child under sixteen years of age. (Gutierrez Aff. ¶ 17.)

5

Koenemann remained in jail until trial because he could not bond out as he was on felony probation due to a previous methamphetamine conviction. (Koenemann Dep. 44-45.) At his trial some months later, the jury promptly found him not guilty. (Koenemann Dep. 45.)

### III. STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

### IV. DISCUSSION

Gutierrez argues he had ample probable cause to arrest Koenemann given what he learned at the scene and had no obligation to conduct a further investigation to uncover potentially exculpatory evidence, as Koenemann then implored. Moreover, Gutierrez contends

that, even if there is a question of fact concerning whether he had actual probable cause to arrest Koenemann, he at least had arguable probable cause and thus is entitled to qualified immunity because any reasonable police officer could have come to the same mistaken belief that he had probable cause to arrest Koenemann.

Koenemann argues, however, that his physical limitations—the braces on his wrists, hands, and fingers—obviously made it impossible for him to commit the battery as Dennis alleged and no reasonable officer could have concluded otherwise. Additionally, Koenemann claims that Dennis was not a credible victim given her prior police record—something he described to Gutierrez and that he could have easily verified, but did not—and that if Gutierrez had done that simple check, he either would have believed Koenemann or done more investigating. As for Gutierrez's questioning of Karmen, Koenemann maintains that she cannot be considered credible given her age and Gutierrez's leading questions.

### A. As a Matter of Law, Gutierrez Had Probable Cause to Arrest Koenemann

Probable cause is an absolute defense to a claim of wrongful arrest by police officers and bars liability under Section 1983. *Brooks v. City of Aurora,* 653 F.3d 478, 484–86 (7th Cir. 2011); *Stokes v. Bd. of Educ. of City of Chicago,* 599 F.3d 617, 622 (7th Cir. 2010); *McBride v. Grice,* 576 F.3d 703, 707 (7th Cir. 2009); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008) (citing *Wagner v. Washington Cnty.*, 493 F.3d 833, 836 (7th Cir. 2007) (per curiam); *Potts v. City of Lafayette*, 121 F.3d 1106, 1113 (7th Cir. 1997)).

Moreover, probable cause to arrest requires no more than a reasonable chance—less than a 50 percent likelihood can be sufficient—that a crime occurred and the suspect committed it. *Nelson v. Vill. of Lisle, Ill.*, 437 F. App'x 490, 493 (7th Cir. 2011) (unpublished); *accord*

7

*Mucha v. Vill. of Oak Brook,* 650 F.3d 1053, 1056–57 (7th Cir. 2011); *Purvis v. Oest,* 614 F.3d 713, 722–23 (7th Cir. 2010). An apparently credible victim who knows the defendant and identifies him as the perpetrator will typically suffice for probable cause. *McBride,* 576 F.3d at 707; *Beauchamp v. City of Noblesville,* 320 F.3d 733, 743 (7th Cir. 2003); *Woods v. City of Chicago,* 234 F.3d 979, 996 (7th Cir. 2000).

Therefore, probable cause to arrest exists "if, at the time of the arrest, the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Wagner*, 493 F.3d at 836 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). In determining whether an officer had probable cause, the Court steps into the shoes of a reasonable person in the position of the officer. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006).

Consequently, the Court must "evaluate[ ] probable cause 'not on the facts as an omniscient observer would perceive them,' but rather 'as they would have appeared to a reasonable person in the position of the arresting officer.'" *Id.* (quoting *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998)). Therefore, the jury should determine the existence of probable cause only "if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1013–14 (7th Cir. 2006).

Koenemann was arrested for domestic battery, an offense Indiana defines as requiring the knowing or intentional touching of an individual who has a child in common with the other person in a rude, insolent, or angry manner resulting in bodily injury to that person. Ind. Code §

8

35-42-2-1.3(a)(3).  The offense becomes a Class D felony if the person committed the battery knowing that a child less than sixteen years of age was present.  Ind. Code § 35-42-2-1.3(b)(2).

Koenemann does not argue that there was no probable cause to believe that a domestic battery had occurred; rather, his position is that, because it was impossible for him to have committed the battery as Dennis alleged, Gutierrez should have believed him, not Dennis, or that with just a little more investigation he certainly would have arrived at that conclusion.

Of course, probable cause can be met if the report comes from a single, credible victim or eyewitness.  *Woods*, 234 F.3d at 996 (citing *Tangwall v. Stuckey*, 135 F.3d 510, 520 (7th Cir. 1998)); *Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 439 (7th Cir. 1986) (holding that a police officer had probable cause to arrest an alleged shoplifter based upon the uncorroborated report of a single security guard and stating that "[w]hen an officer has 'received his information from some person—normally the putative victim or an eye witness—who it seems reasonable to believe is telling the truth,' he has probable cause") (citation omitted).

In this instance, Dennis fulfilled the role of a credible victim of domestic battery. Dennis recounted to Gutierrez her struggle with Koenemann that had just occurred minutes before; she related that she had screamed for Hettinger's help; she had visible injuries consistent with the battery she described; and there was a substantial size difference between the slender Dennis and the much larger Koenemann.

Moreover, although Koenemann suggests that Gutierrez rushed to the conclusion that he was guilty, that overlooks Gutierrez's on-the-scene investigation supporting Dennis's version of events.  For example, Hettinger, an "earwitness" to the struggle upstairs, confirmed that she heard sounds of "things being tossed around" (Gutierrez Aff. ¶ 14) as well as screaming from

9

upstairs (confirming Dennis's statement that she cried out for help) and became so concerned she called 911 to report a domestic battery just moments before Dennis arrived at her door. Gutierrez also interviewed the only real eyewitness, Karmen, who confirmed that both Dennis and Koenemann had hit each other.[3] Thus, because Dennis's version was both plausible and corroborated at least at a minimal level, she was a reasonably credible victim, which alone is sufficient to support probable cause. *Woods*, 234 F.3d at 997.

Nevertheless, Koenemann argues that it was apparent to Gutierrez that he could not have committed domestic battery since his arms and wrists were in braces or immobilizers—limiting his ability to grab Dennis—and it was altogether too painful for him to engage in any battery. In essence, Koenemann is suggesting that Dennis's story was too implausible for probable cause to exist, *Nelson*, 437 F. App'x at 494, or as he argues, would have been "impossible" (Koenemann Resp. Br. 5).

Koenemann does concede, however, that he told Gutierrez at one point during the struggle that he was holding Dennis's printer, that he tried to grab her upper torso, and that he picked up Karmen after the fight. Moreover, it was likely not lost on Gutierrez that Koenemann's hands were sufficiently free of restriction that he was able to use the phone to call police. Furthermore, Koenemann also does not dispute that Dennis told Gutierrez that Koenemann held her down on the floor by applying his right wrist brace to her throat, something conceivable even if he had limited hand mobility. Thus, while Koenemann relies on

---

[3]Although Koenemann argues that Karmen cannot be considered credible given her age and the leading questions Gutierrez posed to her, he offers no legal support for this argument and ignores the fact that Gutierrez obviously did do some significant digging, including trying to get verifying information from the only objectively neutral witness at the scene. In any event, Koenemann's unsupported credibility argument fails because Gutierrez had sufficient evidence of probable cause without Karmen's statement. *See Rankin v. Evans*, 133 F.3d 1425, 1440–41 (11th Cir. 1998); *Marx v. Gumbinner*, 905 F.2d 1503, 1507 (11th Cir. 1990).

the proposition that police may not ignore "conclusively established" evidence that defeats probable cause, *Nelson*, 437 F. App'x at 494; *McBride*, 576 F.3d at 707, or "clearly exculpatory facts," *Stokes*, 599 F.3d at 624, the record, even if viewed in his favor, does not rise to that level of certitude. Koenemann's evidence conclusively established, perhaps, that it was a bit more difficult and painful for him to commit domestic battery, but it does not establish, as he argues, that it was impossible. Stated another way, under the facts and circumstances presented to him, Gutierrez had much more than a "bare suspicion," *Woods*, 234 F.3d at 996; in fact, there was ample room for him to reasonably believe that Koenemann's broken wrists were not so significant an impediment that Dennis's version of events was necessarily implausible.

Finally, Koenemann argues that Gutierrez should have heeded his request to check Dennis's police record which, according to him, would have verified prior incidents of either reporting or committing domestic battery. Apparently this request came too late, however, because it came after Gutierrez announced that he was going to arrest Koenemann for domestic battery (Koenemann Aff. ¶ 8) and thus after Gutierrez had already determined he had probable cause to arrest Koenemann. *Nelson*, 437 F. App'x at 494 (citing *Stokes*, 599 F.3d at 624; *McBride*, 575 F.3d at 707) ("Once there is probable cause, pre-arrest investigation may cease.").

Moreover, it is unclear how this information defeats, or calls into question, probable cause. Although the evidence would arguably reveal that Dennis had led a tumultuous life with her domestic partners, including Koenemann, it would not necessarily cast doubt on her story concerning the events of that day or constitute a "clearly exculpatory fact." *Id.* And Koenemann's request triggered no duty on the part of Gutierrez to do more investigative digging since he already had, by that time, enough evidence to establish probable cause. *Id.*

11

(citing *McBride*, 575 F.3d at 707).

Accordingly, on this record, and as a matter of law, Gutierrez had probable cause to arrest Koenemann, and Koenemann's Fourth Amendment claim therefore fails.

### *B. Gutierrez is Entitled to Qualified Immunity In Any Event*

Gutierrez argues that, even if somehow he did not have probable cause to arrest Koenemann, he is entitled to qualified immunity because a reasonable police officer in the same situation and with the same knowledge could have reasonably believed (albeit mistakenly) that probable cause existed in light of well-established law. *Carmichael v Vill. of Palatine, Ill.*, 605 F.3d 451, 459 (7th Cir. 2010).

"When confronted with a claim for qualified immunity, [the Court] must address two questions: whether the plaintiff's allegations make out a deprivation of a constitutional right, and whether the right was clearly established at the time of defendant's alleged misconduct." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010) (citing *Wheeler*, 539 F.3d at 639); *see Fox v Hayes*, 600 F.3d 819, 832 (7th Cir. 2010); *Newsome v. McCabe*, 319 F.3d 301, 303–04 (7th Cir. 2003).

The first question in the qualified immunity analysis is whether, construing the record in the light most favorable to Koenemann, the arrest violated the Fourth Amendment. As previously discussed, to prevail on his Fourth Amendment false arrest claim, Koenemann must demonstrate that his arrest was made without probable cause. *See McBride*, 576 F.3d at 707 ("Probable cause is an absolute bar to a § 1983 claim for false arrest."); *Fox*, 600 F.3d at 832 (citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). To survive the first prong of the qualified immunity analysis, Koenemann must "raise a genuine issue regarding whether

[Gutierrez] had probable cause to arrest him" for battery. *Woods*, 234 F.3d at 996.

The second prong of the qualified immunity analysis ordinarily would focus on whether the Fourth Amendment right at issue "was clearly established" when the arrest occurred. *McAllister*, 615 F.3d at 881. This is really a "more forgiving standard," *Fox*, 600 F.3d at 833, because the inquiry is modified somewhat in the false arrest context such that Gutierrez is entitled to qualified immunity if "a reasonable officer could have mistakenly believed that probable cause existed." *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998); *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.") (internal quotation marks and citation omitted).

Therefore, in the qualified immunity context, although the question once again centers on whether Gutierrez had probable cause, the relevant inquiry is whether he had arguable probable cause; that is, whether "a reasonable police officer in the same circumstances and with the same knowledge . . . could have reasonably believed that probable cause existed in light of well-established law." *Carmichael*, 605 F.3d at 459.

On this record, Gutierrez at least had arguable probable cause because a reasonable police officer in his position would have certainly known that a battery had occurred; it merely being left to determine who, between Koenemann and Dennis, was the most likely assailant. After investigating, Gutierrez chose to believe Dennis's version of events, and that judgment is not so flawed that no reasonable officer would have made a similar choice. *London v Harris*, No. 09 C 7797, 2011 WL 2683158, at *4 (N.D. Ill., July 11, 2011) (citing *Lennon v Miller*, 66 F.3d 416, 424-25 (2d Cir. 1995)). Dennis's version of the battery was nearly contemporaneous with the event, substantiated by the visible marks on her body, confirmed by her demeanor, and

corroborated at least in part by her cousin, and to some degree by Karmen. Moreover, Gutierrez was certainly entitled to consider all the facts and circumstances, including, of course, the relative size difference between Dennis and Koenemann strongly suggesting that she was most likely the victim.

Accordingly, based on this record, Gutierrez is entitled to the protection of qualified immunity as a matter of law, and summary judgment will be granted accordingly.

## V. CONCLUSION

For the foregoing reasons, Gutierrez's motion for summary judgment (Docket # 24) is GRANTED. The Clerk is directed to enter judgment in favor of the Defendant and against the Plaintiff.

SO ORDERED.

Entered this 18th day of January, 2012.

/S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge
